IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| STEVEN E. GORRELL, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>WAKE COUNTY,<br><br>        Defendant. | CA No. 5:21-CV-00129<br><br>**COLLECTIVE ACTION COMPLAINT** |

Plaintiff Steven E. Gorrell ("Plaintiff Gorrell"), by and through counsel, on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), hereby sets forth this collective action against Wake County ("Defendant") and alleges as follows:

**PRELIMINARY STATEMENT**

1. This action arises out of Defendant's systemic, company-wide willful failure to compensate Plaintiffs for all overtime hours worked at the appropriate overtime rate, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Defendant's pay practices and policies were in direct violation of the FLSA.

2. Plaintiff Gorrell is a paramedic for Defendant, compensated on an hourly basis, who works the "Night" shift. Throughout the relevant period, Defendant maintained a corporate policy of failing to properly compensate paramedics for overtime hours worked at the appropriate overtime rate.

3. Throughout the relevant period, Defendant maintained a company-wide policy whereby a paramedic's workweek for FLSA purposes started at 00:00 on Saturday and ended at 23:59 on Friday. Defendant's policy required paramedics to work alternating weekly schedules,

whereby one week a paramedic would work three (3) twelve-hour shifts (hereinafter, "Week A") and the following week work four (4) twelve-hour shifts (hereinafter, "Week B").

4. Throughout the relevant period, for Plaintiff Gorrell and other similarly situated paramedics working the "Late Peak" or Night shift—which meant a portion of their hours worked was on two separate days—Defendant maintained a corporate policy requiring these paramedics to list all of their hours on the time slot for the day the paramedics first started their shift. For example, if Plaintiff Gorrell started his shift at 18:00 on Friday and worked until 06:00 on Saturday, Plaintiff Gorrell would list in his online timesheet that he worked twelve (12) hours on Friday only.

5. The result of Defendant's time-keeping policy was that Plaintiff Gorrell and other similarly situated employees working the Late Peak and Night shifts on Fridays of Week A and into Saturday of Week B would have to list all of their hours worked on Friday of Week A, even though a portion of their shift was during Week B. Accordingly, Defendants were wrongfully compensating these employees at their regular rate when the portion of these employees' shifts worked in Week B should have been paid at one and one-half (1.5) times their regular rate because these employees worked in excess of forty (40) hours in Week B.

6. Defendant, through its supervisors, was aware that Plaintiff and other similarly situated employees were working in excess of forty (40) hours per week in Week B but were counting a portion of these hours worked in Week A, thereby limiting the amount of overtime compensation. Defendant suffered or permitted, and in fact, required Plaintiffs to work in excess of forty (40) hours per week without being compensated for time and a half (1.5) for all of their overtime work.

7. Defendant's practice of failing to compensate Plaintiffs at the appropriate minimum

and overtime rate(s) for all hours worked violated Plaintiffs' rights under the FLSA.

8. Plaintiff Gorrell brings this action for violation of the FLSA as a collective action, pursuant to Section 216(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class:

> All individuals who were, are, or will be employed by Defendant in Wake County, North Carolina, as paramedics, emergency medical technicians, field training officers, or in similar positions, at any time within the three (3) years prior to the date of commencement of this action, through the present, and who were not compensated at the appropriate one and one-half (1.5) of their regular hourly rate for all hours worked in excess of forty (40) per week.

9. Defendant is liable for its failure to pay Plaintiffs for all work performed and at the appropriate overtime rate for hours worked in excess of forty (40) per week, as well as for all losses to Plaintiffs' retirement-benefits plans caused by Defendant's illegal time-keeping policy.

10. Plaintiffs who elect to participate in this FLSA collective action seek compensation at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

11. The allegations set forth in the preceding paragraphs are realleged and incorporated herein by reference.

12. This Court has federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201 *et seq.*

13. The United States District Court for the Eastern District of North Carolina has personal jurisdiction because Defendant conducts business in Wake County, North Carolina, which is located within this District.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant conducted business in the Eastern District of North Carolina and a substantial part of

the events or omissions giving rise to these claims occurred in this District.

15. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

16. The allegations set forth in the preceding paragraphs are realleged and incorporated herein by reference.

17. Plaintiff Gorrell is an adult resident of the State of North Carolina, residing at 1016 Northclift Drive, Raleigh, North Carolina 27609.

18. Plaintiff Gorrell is currently employed by Defendant, through the Wake County Department of Emergency Medical Services, as an hourly paid paramedic and has held that position since approximately 2020. Plaintiff Gorrell previously held the position of paramedic from approximately 2006 to 2015, and he held the position of field training officer from approximately 2015 to 2020.

19. The FLSA collective action Plaintiffs consist of individuals who were, are, or will be employed by Defendant as hourly paid, full-time emergency medical personnel—including but not limited to emergency medical technicians, paramedics, and field training officers—at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b) and who did not receive compensation for all hours worked, including one and one-half (1.5) times their regular rate for all hours worked over forty (40) in a week.

20. Defendant was and is a political subdivision and county of the State of North Carolina, duly chartered and existing pursuant to the provisions of N.C. Gen. Stat. § 153A-10 and vested with corporate powers and rights as specified in N.C. Gen. Stat. § 153A-11, including but not limited to the capacity to sue and be sued. At all times relevant, Defendant acted through its

managers, departments, and policy makers, including the Wake County Department of Emergency Medical Services and its employees, and the acts, edicts, and practices of said persons represent the official policies of Defendant.

## COVERAGE

21. The allegations set forth in the preceding paragraphs are realleged and incorporated herein by reference.

22. At all times relevant to this action, Defendant has been a public agency within the meaning of the FLSA, 29 U.S.C. § 203(x).

23. At all times relevant to this action, Defendant has been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

24. At all times relevant to this action, Defendant has been an enterprise engaged in commerce or the production of goods for commerce as defined by the FLSA, 29 U.S.C. §§ 203(s), 203(r), because Defendant acts as a public agency and such activities "shall be deemed to be activities performed for a business purpose" under Section 203(r)(2)(C).

25. At all times relevant to this action, Plaintiffs have been employees within the meaning of the FLSA, 29 U.S.C. § 207.

## FACTUAL ALLEGATIONS

26. The allegations set forth in the preceding paragraphs are realleged and incorporated herein by reference.

27. Defendant, through the Wake County Department of Emergency Medical Services, is responsible for providing emergency ambulance service throughout Wake County, North Carolina, on a twenty-four (24) hour per day basis.

28. Defendant, through the Wake County Department of Emergency Medical Services,

employs emergency medical technicians, paramedics, and field training officers who are responsible for administering medical care and for the transportation of sick or injured persons in response to emergency and non-emergency calls.

29. Plaintiff Gorrell has been employed by Defendant, through the Wake County Department of Emergency Medical Services, from approximately 2015 through the present.

30. Plaintiff Gorrell's job duties include but are not limited to responding to emergency calls as a driver or attendant, administering necessary emergency medical care, treatment of injuries to body parts, and lifting and moving patients for transfer to a medical facility.

31. At all relevant times to this action, Plaintiffs were not responsible for performing fire protection or law enforcement activities.

32. When Plaintiffs are hired, Defendant advised Plaintiffs they would be compensated pursuant to an hourly rate for the first forty (40) hours of work and that they would be compensated at a rate of one and one-half (1.5) times their regular hourly rate for any hours worked over forty (40), i.e., overtime pay.

33. Pursuant to Defendant's policy, the standard shift for Plaintiffs is a twelve (12) hour assignment, and Plaintiffs' schedules are on a rotating schedule, which rotates biweekly.

34. Pursuant to Defendant's policy, shifts have staggered start times: Day (06:00–07:30); Early Peak (09:00–11:00); Late Peak (14:00–15:00); and Night (18:00–19:30).

35. Pursuant to Defendant's policy, the structure of the FLSA workweek for Plaintiffs is that the workweek starts at 00:00 on Saturday and ends at 23:59 on the following Friday.

36. Pursuant to Defendant's policy, Plaintiffs' biweekly schedule is as follows: in week A, an employee would work three (3) twelve-hour shifts, and the following week, Week B, the employee would work four (4) twelve-hour shifts. Accordingly, Plaintiffs would work

approximately thirty-six (36) hours in Week A and approximately forty-eight (48) hours in Week B.

37. Further, Defendant's policy required employees working the Late Peak or Night shift—which meant a portion of their hours worked was on two separate days—to record all of their hours worked on the day their shift started instead of on the two separate days that they actually worked.

38. However, for any Continuing Medical Education (CME) training classes employees were required to work, Defendant's policy required employees to list their hours on the day the CME class was actually completed. This was in line with Defendant's policy that "Departments[, such as the Wake County Department of Emergency Medical Services,] are not allowed to 'carry over' extra hours worked in one workweek to another workweek."

39. The result of Defendant's time-keeping policy for regular hours worked (as opposed to hours worked on CME classes) was that Plaintiffs working the Late Peak and Night shifts on Fridays of Week A and into Saturday of Week B would have to list their hours worked on Friday of Week A, even though a portion of their shift was during Week B and thus should have been compensated at one and one-half (1.5) times their regular pay.

40. Further, the result of Defendant's time-keeping policy for regular hours worked was that Plaintiffs' workweek in Week A for FLSA purposes was one hundred seventy-four (174) hours instead of one hundred sixty-eight (168) hours as required by the FLSA because Plaintiffs would have to move or 'carry over' an additional six (6) hours or more to Week A from Week B when they worked the Late Peak or Night shift on Friday of Week A.

41. Upon information and belief, Defendant first implemented the following plan in approximately 2008 and has not changed it since its implementation. Accordingly, Plaintiffs have

7

been continuously subjected to Defendant's time-keeping policy for over three years prior to filing the present action.

42. Defendant's own policy states that "[a]ll schedules must be in accordance with the Fair Labor Standards Act (FLSA)." This policy further provides: "However, it shall be Wake County policy to avoid overtime work whenever possible."

43. As described herein, Defendant willfully violated Plaintiffs' rights by failing to pay them the wages they were owed.

44. Upon information and belief, at all times relevant to this action, Defendant's uniform approach throughout their operations in compensating Plaintiffs was intentionally done to evade their obligations under the FLSA.

45. Not only did Defendant's time-keeping policy affect Plaintiffs' overtime-pay calculations, it also negatively affected Plaintiffs' retirement-benefits plans.

46. As full-time, benefit-eligible employees, Plaintiffs were offered and automatically enrolled into two retirement-benefits plans: (1) the Local Governmental Employee's Retirement System (LGERS) Pension Plan and (2) the North Carolina Total Retirement Plans 401(k) Contribution plan (hereinafter, "401(k) Plan").

47. Benefit-eligible employees, such as Plaintiffs, are automatically members of the LGERS Pension Plan upon being hired by Defendant and are required to contribute six (6) percent of their gross salary each month through pre-tax payroll deductions.

48. As for the employer's contribution to the LGERS Pension Plan, Defendant and the Wake County Department of Emergency Medical Services were required to contribute an actuarially-determined percentage of the gross payroll of members each month to the LGERS Pension Plan for benefits.

49. Upon retirement, an employee enrolled in the LGERS Pension Plan receives an annual benefit, which is 1.85% of the employee's average final compensation times the total years and months of creditable service. Average final compensation is "the average of [the employee's] salary during [their] four highest-paid years in a row."

50. Thus, Defendant's time-keeping policy negatively affects Plaintiffs' benefits under the LGERS Pension Plan in two ways: (1) it lowers the amounts contributed by Defendant, through Wake County Department of Emergency Medical Services, and the employee each month into the Plan; and (2) it decreases an employee's average final compensation, which determines an employee's annual benefit upon retirement.

51. As for the 401(k) Plan, Plaintiffs are automatically enrolled in this Plan upon being hired, and Defendant automatically contributes five (5) percent (pre-tax) annually to Plaintiffs' 401(k) Plans.

52. Pursuant to Defendant's policy, there are annual contribution limits for Plaintiffs—if under the age of fifty (50), employees are capped at $19,500.00, including Defendant's contribution, per year; if over the age of fifty, employees may contribute an additional $6,000.00.

53. Thus, Defendant's time-keeping policy negatively affects Plaintiffs' benefits under the 401(k) Plan in two ways: (1) it lowers the amount contributed by Defendant, through the Wake County Department of Emergency Medical Services, into the 401(k) Plan each year; and (2) by failing to properly pay Plaintiffs for all overtime hours worked, Plaintiffs have less money to invest into their 401(k) Plans.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

54. The allegations set forth in the preceding paragraphs are realleged and incorporated herein by reference.

55. For purposes of the FLSA collective action claims, similarly situated employees include individuals who were, are, or will be employed by Defendant as full-time, nonexempt emergency medical personnel, including but not limited to emergency medical technicians, paramedics, and field training officers, at any time within the three (3) year period prior to joining this lawsuit under 29 U.S.C. § 216(b) and who did not receive compensation for all hours worked, including one and one-half (1.5) times their regular rate for all hours worked over forty (40) in a week.

56. There are numerous (in excess of three hundred (300), upon information and belief) similarly situated current and former employees in North Carolina that fall within the scope of the aforementioned proposed collective class.

57. The members of the proposed collective action, like Plaintiff Gorrell, were employed as emergency personnel and were subject to the same or similar pay practices.

58. The members of the proposed collective action are known to Defendant, are readily identifiable, and may be located through Defendant's records.

59. Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiffs.

60. Plaintiff Gorrell requests that he be permitted to serve as representative of those who consent to participate in this action and that this action be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b).

61. Pursuant to 29 U.S.C. § 216(b), attached hereto and filed with the instant Complaint as Exhibit A is a Consent to File Suit as Plaintiff executed by Plaintiff Gorrell.

# FIRST CAUSE OF ACTION
## Violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*, Brought by Plaintiff Gorrell on Behalf of Himself and All Similarly Situated Employees

62. The allegations set forth in the preceding paragraphs are realleged and incorporated herein by reference.

63. Under the FLSA, an "employee" is defined as "any individual employed by an employer[,]" 29 U.S.C. § 203(e)(1), and an "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency," *Id.* § 203(d). The FLSA further defines "employ" broadly, covering anyone who is "suffer[ed] or permit[ed] to work." *Id.* § 203(g).

64. At all relevant times, Defendant has been and continues to be an "employer" engaged in "commerce" and/or the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. §§ 203(s), 203(r), given Defendant acts as a public agency and such activities "shall be deemed to be activities performed for a business purpose" under Section 203(r)(2)(C).

65. At all relevant times, Defendant has employed and continues to employ "employee[s,]" including Plaintiff Gorrell and each of the members of the prospective FLSA class, within the meaning of the FLSA.

66. Pursuant to the FLSA, 29 U.S.C. § 207(a), employers must pay non-exempt employees at a rate of one and one-half (1.5) times their regular rate of pay for all hours worked over forty (40) in a single workweek.

67. At all relevant times, Plaintiffs were non-exempt, covered employees under the FLSA.

68. In addition, no exemption under the FLSA applies to Plaintiffs because Plaintiffs do not qualify as exempt under Section 207(k) given Plaintiffs were not "employee[s] in fire

11

protection activities or . . . employee[s] in law enforcement activities" within the meaning of the FLSA.

69. As a result of Defendant's corporate policy requiring Plaintiffs to record all of their hours worked on the day their shift started, instead of on the days they actually worked, Defendant failed to compensate Plaintiffs at the rate of one and one-half (1.5) times their regular hourly rate each workweek for all hours worked over forty (40) in a workweek in violation of 29 U.S.C. § 207.

70. Plaintiffs are entitled to back wages at a rate of at least one and one-half (1.5) times their regular rate of pay.

71. Defendant's failure to pay Plaintiffs at the appropriate rate for hours worked in excess of forty (40) per week, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), given Defendant cannot show it acted in good faith.

72. The foregoing conduct, as alleged above, constitutes willful violations of the FLSA under 29 U.S.C. § 255(a), permitting the recovery of unpaid wages for up to three (3) years rather than two (2) years.

73. As such, Plaintiffs seek to recover from Defendant the following damages:

   a. Overtime wages due, including the losses to Plaintiffs' retirement-benefits plans;

   b. Liquidated damages in an equal amount;

   c. Prejudgment interest;

   d. Reasonable attorneys' fees and costs; and

e. All other legal and equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gorrell, on behalf of himself and all those similarly situated, prays that this Honorable Court:

1. Issue an Order certifying this action as a collective action under the FLSA and designate Plaintiff Gorrell as a representative of all those similarly situated under the FLSA collective action;

2. Award Plaintiff Gorrell and all those similarly situated actual damages for all unpaid wages found due to Plaintiff Gorrell and those similarly situated, including losses to Plaintiffs' retirement-benefits plans, and liquidated damages equal in amount, as provided by the FLSA, 29 U.S.C. § 216(b);

3. Award Plaintiff Gorrell and all those similarly situated interest at the statutory rate, pursuant to the FLSA, 29 U.S.C. § 216(b) and consistent with 28 U.S.C. § 1961;

4. Award Plaintiff Gorrell and all those similarly situated attorneys' fees, costs, and disbursements, pursuant to the FLSA, 29 U.S.C. § 216(b); and

5. Award Plaintiff Gorrell and all those similarly situated further legal and equitable relief as this Court deems necessary, just, and proper.

## JURY DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Gorrell hereby demands a trial by jury on all issues so triable.

This 16th day of March, 2021.

                         **OXENDINE BARNES & ASSOCIATES PLLC**

                    By:    */s/ Ryan D. Oxendine*
                            Ryan D. Oxendine (NC State Bar # 27595)
                            James A. Barnes IV (NC State Bar # 33356)
                            6500 Creedmoor Rd., Suite 100
                            Raleigh, NC 27613
                            Telephone: 919-848-4333
                            Fax: 919-848-4707
                            ryan@oxendinebarnes.com
                            jim@oxendinebarnes.com
                            *Attorneys for Plaintiffs*