IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:21-CV-00129-M

STEVEN E. GORRELL, on behalf of )
himself and all others similarly situated, )
                                  )
      Plaintiff, )
                                    )
               v.              )          ORDER
                                    )
WAKE COUNTY, )
                                    )
      Defendant. )

This matter comes before the court on the parties' joint motion to approve the settlement agreement [DE 53] and Plaintiff's motion for approval of attorneys' fees and costs [DE 55]. The court finds the parties' Settlement Agreement and Release [DE 53-1] to be a fair and reasonable settlement of a bona fide dispute. The court thus grants the parties' joint motion, approves the settlement, and dismisses this action with prejudice. The court grants in part and denies in part the motion for fees and costs.

## I.    Background

Steven Gorrell (Named Plaintiff) brought this action asserting a single claim for overtime wages against Wake County (Defendant) under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.* on behalf of himself and all similarly situated employees. DE 1. Named Plaintiff worked for Defendant's Department of Emergency Medical Services (EMS). *Id.* ¶ 18. He alleges that Defendant miscalculated overtime pay for non-exempt EMS employees for shifts spanning two workweeks. *See id.* ¶¶ 32–42. Defendant's FLSA workweek runs from midnight on Saturday until 11:59 p.m. on Friday. *Id.* ¶ 3. Named Plaintiff alleges that when non-exempt EMS

employees worked an overnight shift beginning on Friday, their hours were all counted toward that initial workweek rather than allocated between the two. *See id.* ¶¶ 3–5.

Named Plaintiff filed this suit on March 16, 2021, DE 1, and Defendant waived service. Shortly before Defendant's response deadline, the court granted the parties' Joint Motion Requesting a Stay of Litigation. *See* DE 27 (granting DE 26). During this time, the parties agreed to toll the statute of limitations for any putative FLSA collective action member who opted into the action. DE 53 ¶ 4. The court granted Named Plaintiff's unopposed motion for conditional collective certification, DE 39 (granting DE 36), and the parties' joint motion to lift the stay and extend the case deadlines, DE 38 (granting DE 35).

Under these orders, the parties distributed court-issued notice to putative collective members. *See* DE 53 ¶ 7. At the close of the permitted period, 121 putative collective members opted into this action (collectively with Name Plaintiff, Plaintiffs). *See* DE 56-1 ¶ 13. Defendant produced scheduling records, time records, and pay records for all Plaintiffs since March 16, 2018 along with relevant policies and communications. *See* DE 53 ¶ 9. These materials did not, however, provide Plaintiffs' exact start or stop times for any given shift. DE 56-1 ¶ 16. The parties also engaged in two pre-mediation conferences at which Defendant's internal audit director presented Defendant's methodology for calculating damages. DE 53 ¶ 9. Following an extension of time to allow Plaintiffs' counsel to review relevant materials, DE 50 (granting DE 48), the parties engaged in an all-day mediation with an experienced mediator, DE 53 ¶ 12.

The parties reached a Settlement Agreement and Release (the Agreement) [DE 53-1]. The Agreement resolves all aspects of Plaintiffs' claim except for the reasonable attorneys' fees and costs to be separately awarded by the court. *See* DE 53 ¶ 12; *see also* DE 53-1 ¶ 3(b) ("The Parties have agreed to leave it to the [c]ourt's discretion to determine the amount of attorneys' fees and

2

costs recoverable by Plaintiffs."). The parties also agree that Plaintiffs will release all claims related to the payment of wages and compensation arising through their acceptance of the Agreement, *see* DE 53-1 ¶ 4, and—"except as otherwise required by law"—refrain from identifying Defendant as a party to this suit when publicizing this action, *see id.* ¶ 7.

As to damages, Plaintiffs agreed to Defendant's methodology for calculating back wages based on scheduling records, and Defendant agreed to pay back wages through a three-year statute of limitations period as well as liquidated damages. *See* DE 54 at 8. The Agreement provides for $297,121.90 in individualized payments to Plaintiffs. *See* DE 53-1 ¶ 3(a). These payments consist of $144,810.95 in back wages, an equal amount in liquidated damages, and a $7,500 service award to Named Plaintiff. *See* DE 54 at 4.

As provided by the Agreement, *see* DE 53-1 ¶ 3(b), Plaintiffs filed a separate motion for approval of $113,881.00 in attorneys' fees and $7,487.85 in costs. DE 55. Plaintiffs' supporting memorandum, DE 56, references Plaintiffs' counsel of record Ryan Oxendine's affidavit, DE 56-1, and itemized timesheets, DE 56-2. Defendant responded in opposition, DE 58, and Plaintiffs replied, DE 59. Plaintiffs request an additional $4,400 in attorneys' fees for the time spent preparing that reply. *See* DE 59 at 14 (citing DE 59-2). This court held a hearing on Plaintiffs' motion for fees and costs at which the parties presented evidence and argument.

## II.    Approving the Agreement

Employees can sue their employers for violating minimum wage and overtime compensation requirements under the FLSA. *See* 29 U.S.C. § 216(b). An employee can sue individually or in a collective action on behalf of himself and all "similarly situated employees." *See id.* The Fourth Circuit imposes a "judicial prohibition against the unsupervised waiver or settlement of [FLSA] claims." *Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007), *superseded on other grounds by regulation*, 73 Fed. Reg. 67987 (Nov. 17, 2008), *as recognized in*

3

*Whiting v. Johns Hopkins Hosp.*, 416 Fed. App'x 312, 314 (4th Cir. 2011). The parties present the Agreement for the court's approval.

The Fourth Circuit has not addressed the factors for evaluating proposed FLSA settlement agreements, but courts within this district and circuit have taken guidance from *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982). *See, e.g.*, *Vazquez-Aguilar v. Gasca*, 513 F. Supp. 3d 675, 680 (E.D.N.C. 2021) (citing the same). The factors they considered include whether (1) there is a bona fide dispute about the defendant's liability under the FLSA, (2) the settlement is fair and reasonable, and (3) the attorney's fees and costs awarded are reasonable. *See id.* (citing *Lynn's Food Stores, Inc.*, 679 F.2d 1353). "Finally, the court must also determine whether the proposed settlement furthers or 'impermissibly' frustrates implementation of the FLSA in the workplace." *Robinson v. Harrison Transportation Servs., Inc.*, No. 5:15-CV-298-F, 2016 WL 3647616, at *1 (E.D.N.C. June 30, 2016) (collecting cases). Under the Agreement, the court will separately determine what reasonable attorneys' fees and costs to award. *See* DE 53-1 ¶ 3(b). The other considerations are addressed in turn below.

### A. A Bona Fide Dispute Exists

A bona fide dispute involves some doubt about the plaintiffs' success on the merits and recovery at trial. *See Hall v. Higher One Machs., Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *6 (E.D.N.C. Sept. 26, 2016) (citing *Lynn's Food Stores*, 679 F.2d at 1354). The disagreement may pertain "to the existence of liability under the Act or . . . the amount of such liability." *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 703 n.12 (1945). Evidence of a bona fide dispute may be established by the parties' motion, the pleadings, and the representations in the settlement agreement. *See Hall*, 2016 WL 5416582, at *6 (noting that the parties' joint motion did not address the issue but finding a dispute by looking to the complaint and proposed settlement agreement).

4

The Agreement states that Defendant denies liability, *see* DE 53-1 at 1, and the parties describe disputes about the amount of recoverable back wages, *see* DE 54 at 7 (noting disagreements about the method of calculation and the applicable limitations period). The parties disputed whether Defendant acted "willfully" such that a three-year statute of limitations would apply under 29 U.S.C. § 255(a). *See* DE 54 at 7; *see also Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 357 (4th Cir. 2011) ("Whether a violation is willful impacts the length of the appropriate limitations period under the FLSA and can impact the computation of unpaid overtime compensation under the FLSA."). Having found a bona fide dispute, the court turns to whether the parties' proposed settlement of that dispute is fair and reasonable.

### B. The Parties Reach a Fair and Reasonable Agreement Resolving that Dispute

Courts within this district have considered several factors when evaluating a settlement's fairness and reasonableness, including:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*See Vazquez-Aguilar*, 513 F. Supp. 3d at 681. The court need not tick through each factor individually. Together, these factors favor the Agreement's approval.

The parties conducted enough informal discovery to allow Plaintiffs to "fairly evaluate the liability and financial aspects of [the] case." *See Robinson*, 2016 WL 3647616, at *2. Defendant produced "scheduling records, time records, and pay records for all Plaintiffs" for the period as well as "relevant policies and emails" before mediation. *See* DE 53 ¶ 9. This evidence allowed Plaintiffs to check Defendant's calculations, *see* DE 56-1 ¶ 20, and present evidence suggesting a willful violation, *see* DE 59 at 6.

Similarly, Plaintiffs' counsel possessed sufficient knowledge of the applicable procedural and substantive law to evaluate the strength of Plaintiffs' case. Plaintiffs are represented by two attorneys with approximately twenty years of experience each, including employment law generally and FLSA actions specifically. *See* DE 56-1 ¶¶ 3–4 (describing Robert Oxendine's and James Barnes' practices). No evidence suggests that they—or counsel for Defendant—engaged in fraud or collusion. *See Robinson*, 2016 WL 3647616, at *2 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.").

The proceedings advanced far enough to facilitate a fair and reasonable settlement. After Defendant provided informal discovery, the parties engaged in pre-mediation conferences addressing the methodology for calculating damages. *See* DE 53 ¶10; *see also* DE 54 at 7 (describing this as the primary issue given the parties' agreement about the nature of Defendant's pay practices). The parties also postponed mediation to ensure that Plaintiffs' counsel had adequate time to review relevant information. *See* DE 53 ¶ 10. At mediation, the parties engaged in a day-long session of arms-length negotiations before an experienced mediator. *See* DE 53 ¶¶ 12, 14. The court finds that the parties had an adequate appreciation of the merits of this case to engage in settlement negotiations. Further litigation would require more time and expense without the possibility of increasing Plaintiffs' recovery. *See id.* ¶ 14.

The parties represent that the Agreement provides Plaintiffs with all back wages potentially owed by Defendant for the full three-year statute of limitations plus an equal amount in liquidated damages. *See* DE 54 at 5. Although precise clock-in and clock-out times were not included, *see* DE 56-1 ¶ 16, Defendant's internal auditor calculated the back wages owed to each Plaintiff based on their scheduled shifts and salaries, *see* DE 54 at 4–5. Plaintiffs accepted these calculations and their underlying assumption that scheduled hours reflect the actual hours worked. *See* DE 56-1

¶ 20. The $144,810.95 in back wages included in this figure fully compensates Plaintiffs, *see* DE 54 at 5,[1] and will not be affected by the award of attorneys' fees and costs, *see id.* at 8.

No hearing is needed to investigate the fairness of the Agreement as it provides payments at or above what Plaintiffs could recover at trial. Class actions under Federal Rule of Civil Procedure 23 require a fairness hearing after the court preliminarily approves a proposed settlement. *See Beasley v. Custom Communs., Inc.*, No. 5:15-CV-00583-FL, 2017 U.S. Dist. LEXIS 219975, at \*4 n.2 (E.D.N.C. Oct. 24, 2017) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991)).[2] But the statutory requirements pertaining to an FLSA collective action are "independent of, and unrelated to, the requirements for class action under Rule 23." *Haskett v. Uber Techs., Inc.*, 780 F. App'x 25, 27 (4th Cir. 2019) (per curiam) (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1112 (9th Cir. 2018)) (rejecting collective members' arguments that Rule 23's notification requirements applied to proposed settlements of FLSA claims). While some courts have elected to hold fairness hearings before approving settlement agreements in FLSA collective actions, *see, e.g.*, *Hall*, 2016 WL 5416582, at \*6, the court finds that no such hearing is necessary under these circumstances.

## C. The Parties' Agreement Does Not Impermissibly Frustrate the FLSA's Implementation

Judicial approval of FLSA settlements also involves reviewing whether the Agreement's provisions "impermissibly" frustrate the FLSA's implementation. *See, e.g.*, *Robinson*, 2016 WL 3647616, at \*1. Some courts have objected to broad provisions waiving unrelated claims against

---

[1] The parties represent that this figure exceeds the total back wages owed under these calculations. *See* DE 54 at 8 (noting that Defendant accepted this figure despite discovering after mediation that overstates the back wages owed to some Plaintiffs in the third year).

[2] No Westlaw citation is available.

defendants and barring the parties from disclosing the agreement. *See id.* at \*3–4. The more limited provisions presented in the Agreement do not raise the same concerns.

To start, the Agreement's release provision does not sweep in all possible claims against Defendant. *See id.* at \*4 (finding that a "general release is impermissibly overbroad"). Instead, the waiver pertains only to other wages-and-hours claims arising before Plaintiffs' acceptance of the Agreement. *See* DE 53-1 ¶ 4. Such claims relate to Plaintiffs' FLSA action and may be waived in a settlement. *See Lopez v. Nights of Cabiria, LLC,* 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015) ("The parties have every right to enter into a settlement that waives claims relating to the existing [FLSA] suit in exchange for a settlement payment.").

The "Limited Disclosure" provision here presents a closer question but does not render the Agreement unreasonable. Courts have found confidentiality clauses unreasonable where they seek to restrict public access to the terms of the settlement. *See Monzon v. Gali Serv. Indus., Inc.*, No. CIV.A. DKC 15-0286, 2015 WL 1650167, at \*3 (D. Md. Apr. 13, 2015) (collecting cases). The Agreement remains accessible as part of the public record of this lawsuit. *See* DE 53-1 ¶ 7.

Still, some courts have gone further by rejecting provisions that prevent parties from disclosing the terms of publicly filed settlement agreements. *See, e.g., Robinson*, 2016 WL 3647616, at \*4 (citing *Lopez*, 96 F. Supp. 3d at 179–80) (adopting *Lopez's* reasoning that preventing plaintiffs from speaking to others about their experience would inhibit the FLSA's goal of ensuring that workers are aware of their rights). The "Limited Disclosure" provision at issue does not prevent Plaintiffs or their counsel from publicizing this action or the Agreement. Instead, the provision limits only "explicit reference to Wake County as a party" in such efforts and does so only if consonant with the applicable laws. *See* DE 53-1 ¶ 7.

**D. Conclusion**

The Agreement reflects a fair and reasonable resolution of a bona fide dispute about Defendant's liability under the FLSA. The Agreement also provides for a separate award of reasonable attorneys' fees and costs. Finally, the Agreement's provisions do not impermissibly frustrate the FLSA's implementation. As a result, **the court approves the Agreement**.

As provided by the Agreement, Defendant shall pay $144,810.95 to Plaintiffs in back wages, an equal amount in liquidated damages, and a $7,500 service award to Named Plaintiff. *See* DE 53-1 ¶ 3(a); DE 54 at 4. The separate award of fees and costs is addressed below.

## III. Awarding Attorneys' Fees and Costs

Prevailing plaintiffs are entitled to an award of reasonable attorneys' fees and costs under the FLSA. *See Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 242 (4th Cir. 2010) (citing 29 U.S.C § 216(b)). These plaintiffs bear the burden of proving what would constitute a reasonable award. *Har-Tzion v. Waves Surf & Sport, Inc.*, No. 7:08-CV-137-D, 2011 WL 3421323, at *1 (E.D.N.C. Aug. 4, 2011). Defendant contends that Plaintiffs have not met their burden as to the fees or costs they claim. Plaintiffs' motion has been fully briefed and argued at a hearing. As explained below, the court grants in part and denies in part Plaintiffs' motion.

### A. Reasonable Attorneys' Fees

The Fourth Circuit has established a three-step process for determining reasonable attorneys' fees. First, the court should calculate a "lodestar" figure by "multiplying the number of reasonable hours expended times a reasonable rate." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). To determine what hours and rates are reasonable, the court considers the factors enumerated in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See McAfee*, 738 F.3d at 88 n.5 (citing *Barber v. Kimbrell's*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978)). These factors include:

9

(1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*See id.* "Some of these 'factors may not have much, if anything, to add in a given case,' but those 'that do apply should be considered.'" *Coward v. Robinson*, No. 110CV147LMBMSN, 2017 WL 5195868, at *2 (E.D. Va. Nov. 9, 2017) (quoting *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010)). After making this initial lodestar determination, the court must subtract any fees reflecting time spent on unsuccessful claims. *McAfee*, 738 F.3d at 88. Lastly, the court should award a percentage of the amount remaining based on the extent of the plaintiff's success. *Id*

The parties' dispute focuses on the first step—the reasonable rates and hours. All told, Plaintiffs request $118,281 in attorneys' fees and $7,487.85 in costs. This attorneys' fee figure consists of $113,881.00 based on 430.3 hours expended through the filing of the motion, *see* DE 56 at 1, and an additional $4,400 based on 17.0 hours expended on its reply to Defendants, *see* DE 59 at 14 (citing DE 59-2). "Plaintiffs are entitled to receive compensation for litigating fee requests," so all the fees sought are addressed together. *See Rivers v. Ledford*, 666 F. Supp. 2d 603, 608 (E.D.N.C. 2009) (citing *Hymes v. Harnett Cnty. Bd. of Educ.*, 664 F.2d 410, 413–14 (4th Cir. 1981)). While Defendant acknowledges that Plaintiffs are prevailing parties entitled to some award of attorneys' fees under the statute, it maintains that the rates charged and hours expended are excessive. *See* DE 58 at 5.

### 1. Reasonable Hourly Rates

Plaintiffs seek an award for fees for legal services performed by three attorneys and one paralegal. Plaintiffs' counsel of record Ryan Oxendine and his law partner James Barnes IV each

have around twenty years of legal experience. *See* DE 56-1 ¶¶ 3–4. Their associate attorney Spencer Fritts has around four years of legal experience. *See id.* ¶ 5. Plaintiffs' counsel were supported by their paralegal Holly Mabe. *See id.* ¶¶ 21, 23. Plaintiffs contend that their current hourly rates are reasonable: $325 for Mr. Oxendine and Mr. Barnes, $250 for Mr. Fritts, and $110 for Ms. Mabe. *See id.* ¶ 23.

As the fee applicants, Plaintiffs bear the burden of showing that the rates requested are "consistent with the prevailing market rates in the relevant community for the type of work for which [they] seek[] an award." *See McAfee*, 738 F.3d at 91 (internal quotation marks omitted). The relevant community is the Eastern District of North Carolina. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009) (recognizing the Eastern District of Virginia as "the relevant community where the district court sits" for determining the prevailing market rates). Fee applicants must produce specific evidence of the prevailing market rates beyond the attorney's own affidavit. *See id.* at 245 (citing *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). These rates "may be established through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market." *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987).

Plaintiffs rely on decisions awarding fees to support their rates' reasonableness. *See* DE 56 at 13 (citing several decisions from other districts); DE 59 at 12 (supplementing with a 2018 decision from the Eastern District of North Carolina). Citations to decisions from other districts do not speak to the prevailing market rates in the "relevant community." *Cf. Robinson*, 560 F.3d

at 244. Thus, this determination turns on the parties' arguments about other FLSA cases from the Eastern District of North Carolina.

Defendant submits that the hourly rates should be reduced to $250 for partners and $200 for associates based on three FLSA cases from 2011 and 2012. *See* DE 58 at 18–19. Plaintiffs reply that they request rates at or below those recognized to be reasonable in a more recent FLSA case. *See* DE 59 at 12 (citing *Lorenzo v. Prime Commc'ns, L.P.*, No. 5:12-CV-69-H-KS, 2018 WL 10689708, at *5–6 (E.D.N.C. Sept. 28, 2018)). Plaintiffs' citation better evidences the current reasonable rates for FLSA cases in the relevant community. See DE 59 at 12 (noting that rates have increased in the decade since the cases Defendant cites were decided).

In *Lorenzo*, the court applied hourly rates of $325 for a partner with nine years of experience, $275 for an associate with two years of experience, and $125 for paralegals. *See* 2018 WL 10689708, at *5. The court did so, in part, based on a local attorney's averments that these rates were "within the range of the prevailing market rate for similarly skilled attorneys and staff engaged in similar work and cases in the Raleigh, North Carolina metropolitan community, as well as the Eastern District of North Carolina." *See id.* at *5–6 (crediting this affidavit). Plaintiffs' counsel brought more legal experience to this matter than these attorneys from *Lorenzo*. *Compare id.*, *with* DE 56-1 ¶¶ 3–5. Because Plaintiffs seek rates at or below those recently recognized to be reasonable for attorneys with less experience, the lodestar calculation uses their current rates.

| Professional | Reasonable Rate |
|---|---|
| Ryan Oxendine | $325 |
| James Barnes IV | $325 |
| Spencer Fritts | $250 |
| Holly Mabe | $110 |

## 2. Reasonable Hours

The lodestar calculation's second component requires determining the hours reasonably expended by Plaintiffs' counsel. "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)). As a result, "[t]he [c]ourt should not compensate plaintiff's counsel for hours which it finds excessive, redundant or otherwise unnecessary." *Rivers*, 666 F. Supp. 2d at 606 (internal quotation marks omitted).

That said, the "essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *See Fox v. Vice*, 563 U.S. 826, 838 (2011). Put differently, "trial courts need not, and indeed should not, become green-eyeshade accountants" when calculating reasonable fee awards. *See id.* (emphasizing that "the determination of fees 'should not result in a second major litigation'"). As a result, precedent places no requirement on trial courts to make targeted reductions addressing every issue the parties raise. *See Harwood v. Am. Airlines, Inc.*, 37 F.4th 954, 960–61 (4th Cir. 2022) (citing *id.*).

Defendant challenges roughly two-thirds of Plaintiffs' counsels' time entries. Defendant spreads these challenges across over seventy bullet points—many of which include multiple dates that, in turn, aggregate multiple time entries. *See* DE 58 at 7–16. All told, Defendant maintains that 82.8 percent of the hours included in Plaintiffs' initial submission are in some way "improper." *See* DE 58 at 16. Rather than backing out each challenged hour at the rate billed, Defendant proposes a fixed, "in kind" reduction of the total fees sought by 82.8 percent. *See id.* Plaintiffs argue for more targeted adjustments—conceding that certain entries should not be compensated, *see* DE 59 at 7, 10, and suggesting that other deficiencies be addressed by adjusting only those entries affected, *see id.* at 8–9.

The court resolves the issues raised in Defendant's challenges by dividing them into three categories: (1) noncompensable activities, (2) non-legal work performed by attorneys, and (3) inadequately documented entries. The first two categories are addressed through targeted adjustments based on the nature of the activity reflected in the time entries. The third category involves more pervasive issues that interfere with the court's reasonableness determinations.

### a. Noncompensable Activities

This first category covers hours that should be excluded based on the activity they reflect. *See, e.g., Ramirez v. Liberty Life Assurance Co. of Bos.*, No. 3:18-CV-00012-RJC, 2019 WL 4199808, at *3 (W.D.N.C. Sept. 4, 2019) (excluding entries related to purely clerical tasks).

**Excludable Research:** Defendant contends that several entries involve "impermissible attorney research." *See* DE 58 at 7. Defendant bases some of these challenges on the subjects of the inquiries while others reflect a more general objection to the entries' documentation. The court excludes entries falling in the former category but finds that the issues raised by the latter are more appropriately addressed through a fixed-percentage reduction to the fee award.

Legal research may be compensable "if the research is (1) relevant and (2) reasonable in terms of time for the scope and complexity of the litigation." *See Certain v. Potter*, 330 F. Supp. 2d 576, 582 (M.D.N.C. 2004). Further, "where the movant has satisfied the [c]ourt that experienced, skilled counsel have conducted relevant legal research in good faith, the number of allowable hours in the lodestar computation will not be reduced absent a showing of specific grounds." *Id.* Even so, Plaintiffs do not dispute that some of the research time should be excluded.

Defendant contends that 8.7 hours spent researching claims that Plaintiffs did not bring should not be compensated. *See* DE 58 at 8 n.14 (4.8 hours on ERISA claims); *id.* at 12–13 n.60 (3.4 hours related to retaliation and age discrimination claims); *id.* at 13 n.62 (0.5 hours related to "compression pay"). Plaintiffs agree and "no longer seek payment" for research time related to

these claims. *See* DE 59 at 10. Defendant also argues that research into the ethics rules applicable to Plaintiffs' counsels' website and "self stamped envelopes for mailings" should not be compensated. *See* DE 58 at 13 n.67; *id.* at 13 n.68, *id.* at 14 n.69. Plaintiffs' reply cites no authority for compensating such inquiries as "relevant legal research." *See Certain*, 330 F. Supp. 2d at 583. All together, these exclusions result in the following adjustments.

| Professional | Hours Adjustment |
|---|---|
| Ryan Oxendine | (0.5) |
| James Barnes IV | (2.8) |
| Spencer Fritts | (10.2) |
| Holly Mahe | - |

No other exclusions are imposed for impermissible attorney research. Some of the challenged entries are relevant and reasonable in scope to this litigation. *See, e.g.*, DE 56-2 at 41 (billing 1.0 hours for "researching prior FLSA complaints for drafting purposes"). The documentation supporting others does not allow for such determinations. *See, e.g.*, *id.* at 22 ("Office conference with J. Barnes, S. Fritts, and paralegal; telephone conference with Bill Hopkins re: notice to opt-in plaintiffs; telephone conference with Natalie Best re: notice via email; legal research; office conference with J. Barnes; attention to file; review notice labels."); *id.* at 25 ("Correspondence from Kevin Joyner with attachments; review proposed court documents; various correspondence with S. Fritts; research."). This sort of "[o]verbroad listing of tasks within a single billing entry frustrate[s] a court's attempt to review whether an attorney's hours on a given task were reasonable versus excessive." *See Kinsinger v. SmartCore*, LLC, No. 317CV00643FDWDCK, 2020 WL 2926476, at *5 (W.D.N.C. June 3, 2020) (quoting *Triplett v. N. Carolina Dep't of Pub. Safety*, No. 5:15-cv-00075, 2017 WL 3840422, at *4 (W.D.N.C. Sept. 1, 2017)). As a result, these inadequately documented entries support and are addressed through

the fixed-percentage reduction applied in Section III.A.2.c. *See Denton v. PennyMac Loan Servs.*, LLC, 252 F. Supp. 3d 504, 525 (E.D. Va. 2017) (applying this "traditional remedy").

**Clerical Tasks:** Purely clerical tasks should not be compensated. *See Yates v. Colvin*, No. 5:14-CV-472-BO, 2015 WL 1284241, at \*2 (E.D.N.C. Mar. 18, 2015); *see also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 ("purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"). These tasks include "filing documents with the court, issuing summonses, scanning and mailing documents, reviewing files for information, printing pleadings, organizing documents, creating notebooks or files, assembling binders, emailing documents, and making logistical telephone calls." *See Lamonaca v. Tread Corp.*, 157 F. Supp. 3d 507, 521 (W.D. Va. 2016). Defendant contends that several entries reflect non-compensable clerical tasks. *See* DE 58 at 9–16 n.19–21, 26–29, 31, 34, 42, 46, 47, 48, 53, 55, 57, 59, 64, 72, 74, 80, 82–83, 86.

Plaintiffs "concede[] that some of these tasks are clerical in nature and thus should not be compensated." *See* DE 59 at 7. Their timesheets include hours for filing documents, *see, e.g.*, DE 56-2 at 39; preparing and filing opt-in consent forms, *see, e.g.*, *id.* at 37; and various mailings, *see, e.g.*, *id.* at 21 ("Addressing return envelopes. Stuffing envelopes. Putting stamps on return envelopes."). Entries lumping clerical tasks together with compensable activities support and are addressed through the fixed-percentage adjustment applied in Section III.A.2.c. Removing entries reflecting clerical tasks results in the following adjustments.

| Professional | Hours Adjustment |
|---|---|
| Ryan Oxendine | (1.2) |
| James Barnes IV | (9.2) |
| Spencer Fritts | (8.2) |
| Holly Mabe | (40.6) |

Case 5:21-cv-00129-M   Document 66   Filed 08/09/22   Page 16 of 31

**Public Relations:** Defendant objects to 0.6 hours of time it claims relate to noncompensable public relations efforts. *See* DE 58 at 9 n.22 & n.25. One of the challenged entries involves such efforts. *See* DE 56-2 at 39 ("Various correspondence from paramedic clients; review list with paralegal; interview with Law360 reporter; discussions with S. Fritts.").[3] Plaintiffs argue that this interview "directly impact[ed]" this litigation because "negative publicity of a defendant can often lead to an early settlement." DE 59 at 10.

Plaintiffs rely on an opinion noting that the Ninth Circuit had allowed fees for time spent on public relations where the efforts directly contributed to the attainment of the plaintiffs' litigation goals. *See* DE 59 at 10 (quoting *McGee v. Cole*, 115 F. Supp. 3d 765, 771 (S.D.W. Va. 2015) (citing *Davis v. San Francisco*, 976 F.2d 1536 (9th Cir. 1992), *reh'g denied, vacated in part, and remanded*, 984 F.2d 345 (9th Cir. 1993))). But in *Rum Creek Coal Sales v. Caperton*, the Fourth Circuit declined to adopt the Ninth Circuit's holding from *Davis* and stated that "the legitimate goals of litigation are almost always attained in the courtroom, not in the media." *See* 31 F.3d 169, 176 (4th Cir. 1994) (citing *Davis*, 976 F.2d at 1545). Finding no reason to depart from *Rum Creek's* general exclusion of public relations efforts, the 0.3 hours spent giving the interview must be excluded from the lodestar calculation. *See, e.g.*, *Rivers*, 666 F. Supp. 2d at 607 (citing *Rum Creek Coal Sales, Inc.*, 31 F.3d at 176) (declining to "make an exception for compensating Plaintiffs' public relations efforts").

| Professional | Hours Adjustment |
|---|---|
| Ryan Oxendine | (0.30) |
| James Barnes IV | - |
| Spencer Fritts | - |
| Holly Mabe | - |

---

[3] The other entry relates to responding to Named Plaintiffs' questions about inquiries he had received from other Plaintiffs. *See* DE 56-2 at 38 ("call with Steve regarding articles about the case and number of opt-in plaintiffs calling him.").

### b. *Non-Legal Tasks Billed at Attorneys' Hourly Rates*

Apart from the noncompensable activities addressed above, Defendant also challenges many of Plaintiffs' time entries as excessive. The most significant challenge relates to Plaintiffs' damages calculation. As explained below, the court reallocates attorney hours spent on non-legal tasks to the paralegal's billing rate. Issues about the reasonableness of other allegedly excessive entries are addressed through the fixed-percentage reduction applied in Section III.A.2.c.

Defendant challenges as "grossly excessive" over 140 hours related to Plaintiffs' damages calculations. *See* DE 58 at 15 n. 79. Defendant contends that Plaintiffs' damages calculation "had no role whatsoever in any of Plaintiffs' successes," and thus no related hours should be compensated. *See id.* In contrast, Plaintiffs maintain that their calculations were essential to the successful outcome they obtained. *See* DE 59 at 3–6 (citing DE 59-1). While this task is compensable, most of the time Plaintiffs' counsel spent on it must be billed at reduced rates to reach a reasonable fee award.

Defendant maintains that "this action essentially hinged on damages calculations alone." *See* DE 58 at 20 n.89. The question addressed by these damages calculations was how to properly compensate Plaintiffs for shifts that overlapped two workweeks. While narrow, this issue included some complications. Defendant's pay practices affected staggered overnight shifts, resulting in different numbers of hours being misallocated for different Plaintiffs working different shifts during each workweek. And as noted at the hearing, the scheduling data did not include exact start and stop times or always reflect the shifts Plaintiffs worked.

At mediation, the parties agreed to calculate the amounts owed to Plaintiffs using Defendant's methodology for settlement purposes. *See* DE 54 at 8. Defendant explained this methodology to Plaintiffs' counsel several months before mediation. *See id.* at 4. Because the damages issue at the heart of this action was settled using Defendant's calculations, Defendant

Case 5:21-cv-00129-M   Document 66   Filed 08/09/22   Page 18 of 31

contends that Plaintiffs' counsel "did not contribute whatsoever to this process." *See* DE 58 at 20 n.89 ("Defendant's unilateral efforts in conducting damages calculations were key.").

Defendant's account of the outcome reached is incomplete. Plaintiffs' counsel prepared their case for a possible trial. Doing so required developing damages calculations to present to the jury and involved identifying deficiencies in the calculation Defendant had prepared. Rather than incur the litigation costs and risks associated with trial, Defendant decided to pay amounts it disputed to its employees. Put differently, Plaintiffs' preparedness to proceed resulted in Defendant agreeing to pay at least fifty percent more than it initially offered at mediation. *See* DE 59-1.[4]  Agreeing to calculate settlement figures using Defendant's methodology does not preclude Plaintiffs' from recovering attorneys' fees reasonably necessary to reaching that result.

Still, achieving a favorable outcome for their clients does not provide Plaintiffs' counsel with a blank check. "To ascertain what is reasonable in terms of hours expended and the rate charged," the court must weigh the time spent and results obtained against other *Johnson* factors like the difficulty of the question raised and the skills required to perform the services rendered. *See McAfee*, 738 F.3d at 88, 88 n.5.  The court may not simply accept as reasonable the time entries as reported by counsel. *Rivers*, 666 F. Supp. 2d at 606.

When assessing the reasonableness of a prevailing party's time entries, "[i]t is appropriate to distinguish between legal work, in the strict sense, and . . . other work which can often be

---

[4] Plaintiffs attach an email from Defendant's counsel summarizing the parties' positions during mediation. Although Federal Rule of Evidence 408(a) bars the use of such evidence for certain purposes, the Third and Ninth Circuits as well as district courts within the Fourth Circuit have found the determination of reasonable fee awards to fall within Rule 408(b)'s exception to this prohibition. *See Genetic Veterinary Scis., Inc. v. LABOklin GmbH & Co. KG*, No. 2:17CV108, 2020 WL 863975, at *2 (E.D. Va. Feb. 20, 2020) (citing *Lohman v. Duryea Borough*, 574 F.3d 163 (3d Cir. 2009)); *Bratcher v. Dolphin*, No. 5:10-CV-01100, 2013 WL 1194952, at *6 (S.D.W. Va. Mar. 22, 2013) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011)).

accomplished by non-lawyers." *See id.* at 607. A lawyer may perform nonlegal work "because he has no other help available," but these activities "may command a lesser rate." *See id.* (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n. 10 (1989)) (explaining that the "dollar value [of such work] is not enhanced just because a lawyer does it."). As a result, courts have removed hours billed by counsel for non-legal tasks and added them back at the appropriate market rate for trained professionals who could have performed these tasks. *See, e.g.*, *id.* at 607–08.

Defendant challenges over forty entries related to Plaintiffs' damages calculations. *See* DE 58 at 15 n.79. Some of these entries include "legal work[] in the strict sense," such as preparing for and attending a meeting with opposing counsel to discuss the scheduling records provided. *See, e.g.*, *id.* (challenging entries from September 29, 2021); DE 56-2 at 16 ("[P]rep for meeting with Wake Co re: limited discovery; attending meeting; and discussing and reviewing records with Jim and Steve"). These entries involve tasks compensable at attorneys' rates. Many others, however, reflect only non-legal work that must be compensated at reduced rates.

Plaintiffs' submission includes nearly ninety hours of attorney time spent "reviewing" schedules, "calculating hours," and working on spreadsheets that include these tabulations. Plaintiffs "discovered during this process" that individualized calculations "were never going to be accurate because none of the records showed the exact stop or start times for any given shift of Plaintiffs." *See* DE 59 at 4. Plaintiffs instead proposed a "formula . . . involving the total number of workweeks affected, an assumption of the number of hours worked by Plaintiffs . . ., and an extrapolation of Named Plaintiff's salary." *See* DE 56-1 ¶ 16. Named Plaintiff's salary was known and the assumption about affected hours per-shift remained constant, so the only factor in Plaintiffs' formula requiring supporting calculations was the number of workweeks affected.

Given this, these hours appear to reflect the time Plaintiffs' counsel spent tallying affected workweeks and reviewing produced documents for scheduling discrepancies.

This sort of review and compilation does not require the application of legal skills that would support an attorney's otherwise-reasonable hourly rate. In *Rivers*, the court recognized that "[a]n attorney, using good billing judgment, would not keep a client long if he or she charged the client three times as much to do a task easily done by a trained paralegal." *See* 666 F. Supp. 2d at 607. As a result, the *Rivers* court adjusted the hours associated with this task to the paralegal's rate. *See id.* The same sort of reallocation is appropriate here.

That said, the court does not find that a reduction to these reallocated hours is required. Both parties stress the importance of damages calculations to this case. *See* DE 58 at 20 n. 89; DE 59 at 3–6. While simpler than Defendant's fully-individualized methodology, Plaintiffs' proposed calculation still required analyzing every scheduled workweek over a three-year period for more than 120 employees. Even accepting that not every Plaintiff worked all three years, this data set could still encompass over 18,000 unique workweeks. On top of the volume of records produced, Plaintiffs explained that they changed tack after identifying discrepancies in the data. To be compensable, the hours expended need only be reasonable—not optimally efficient. The court does not find the reallocated hours to be unreasonable given the scope of the inputs, the difficulties encountered, and the importance of the task.

Reallocating non-legal work on Plaintiffs' damages calculations by counsel to a paralegal's rate results in the following adjustments.

| Professional | Hours Adjustment |
|---|---|
| Ryan Oxendine | (30.5) |
| James Barnes IV | (34.1) |
| Spencer Fritts | (23.7) |
| Holly Mabe | - |
| Reallocated Time | 88.3 |

### c. *Inadequate Documentation*

"Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. Block-billed entries that lump multiple tasks together under a single time entry present a "significant barrier to a reasonableness review," as do "[v]ague task descriptions." *See Route Triple Seven Ltd. P'ship v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 621 (E.D. Va. 2015). These forms of inadequate documentation "preclude[] the court . . . from making a 'fair evaluation of the time expended . . . [and] the nature and need for the service.'" *See id.* (quoting *Uzzell v. Friday*, 618 F. Supp. 1222, 1226 (M.D.N.C. 1985)).

When faced with these inadequacies, courts may reduce the award by (1) "identifying and disallowing specific hours that are not adequately documented," (2) applying a fixed-percentage reduction to the hours sought based on the court's understanding of the case, or (3) "some reasoned combination of the two." *See Sines v. Kessler*, No. 3:17-CV-00072, 2020 WL 2736434, at *6 (W.D. Va. May 26, 2020) (quoting *Guidry v. Clare*, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006)). A fixed-percentage reduction may be appropriate where the number of vague and block-billed entries would make it "difficult to set out a line-by-line summary deleting every unreasonable hour." *See id.* Plaintiffs' submission includes enough inadequately documented entries to warrant an across-the-board reduction in addition to the targeted adjustments applied above. *See, e.g.*, *id.*

Plaintiffs' submission includes dozens of entries with descriptions that are vague, block-billed, or both. To illustrate these issues, consider Defendant's challenges to legal research time. Some entries have been excluded based on the stated subject of the inquiries, *see* Section III.A.2.a *supra*, but many others simply lump "research" or "legal research" into a list of other tasks, *see, e.g.*, DE 58 at 8 n.10; *id.* at 8 n.17, *id.* at 9 n.24; *id.* at 10 n. 30; *id.* at 11 n.49; *id.* at 12 n.58; *id.* at 13 n.61; *id.* at 14 n.70; *id.* at 14 n.73; *id.* at 14 n.75; *id.* at 14 n.77. These inadequacies frustrate the court's determination of which hours were spent on compensable tasks. The court

cannot, for example, assess the compensability of a time entry that lumps "research" in with various compensable and noncompensable activities. *See, e.g.*, DE 56-2 at 20–21 ("Office conference with paralegal; work on notices to opt-in plaintiffs; office conference with S. Fritts; review notices; review website with link to collective action case; office conference with J. Barnes; research."). Moreover, even assuming that the research time should be compensated, an entry that lumps this time with that spent on other compensable activities interferes with the court's determination of whether the total time spent on each task was excessive. *See, e.g., id.* at 41–42 ("Continue legal research; begin rough draft of Complaint; discussions with J. Barnes.").

By way of further example, Plaintiffs' counsel billed over twenty-five hours on what they vaguely describe as preparing for mediation. *See* DE 58 at 15 n. 81 (aggregating entries from October 18, 2021; December 6, 2021; and December 7, 2021). Without more detail, these descriptions "'frustrate any attempt to assess the reasonableness' of the many hours [counsel] apparently devoted to those tasks." *See Sines*, 2020 WL 2736434, at *8 (quoting *Route Triple Seven*, 127 F. Supp. 3d at 621) (supporting a fixed-percentage reduction by citation to many entries in which a timekeeper vaguely described tasks as various forms of "preparation"). As a result, a fixed-percentage reduction to the adjusted hours spent is warranted.

When making such a reduction, "courts must exercise sound judgment based on knowledge of the case and litigation experience to reduce the number of hours by an appropriate percentage." *Route Triple Seven Ltd.*, 127 F. Supp. 3d at 621. "Courts faced with excessively vague or inadequate descriptions of tasks" in fee petitions have reduced hours "by percentages ranging from [twenty percent] to [ninety percent]," while block-billed entries typically warrant reductions "ranging from [ten percent] to [twenty percent]." *See id.* at 621–22 (collecting cases). When both vague and block billed entries interfere with the reasonableness determinations, courts often

address all of these inadequacies through a single fixed-percentage adjustment. *See, e.g.*, *id.* at 622 (applying a fifteen percent reduction to the hours sought to account for vague and block-billed entries); *Sines*, 2020 WL 2736434, at *6–9 (applying a twenty percent reduction to the hours remaining after removing facially excessive entries "to account for excessively vague entries, block billing, and noncompensable clerical tasks that should not have been included").

Based on the court's evaluation of this case, **a fifteen percent reduction to the adjusted hours sought by Plaintiffs is appropriate.** On the one hand, extensive vagueness and lumping frustrate the court's assessment of the reasonableness of the time spent on several tasks Defendant argues to be excessive. Many courts have found that similar inadequacies justified higher reductions. *See Route Triple Seven Ltd. P'ship*, 127 F. Supp. 3d at 621 (noting reductions ranging from twenty to ninety percent). On the other hand, the court has already accounted for entries that are facially noncompensable, *see* Section III.A.2.a *supra*, and others that should be billed at a reduced rate, *see* Section III.A.2.b *supra*. Because some of Plaintiffs' counsels' entries allowed for these more targeted adjustments, the court applies a lower across-the-board reduction than might otherwise be warranted. *See Sines*, WL 2736434, at *6–*9 ("strik[ing] a balance" by "eliminating or reducing facially excessive entries where feasible and relying on [the court's] informed judgment to make reasonable, across-the-board reductions"). Additionally, in exercise of their billing judgment, Plaintiffs' counsel have already excluded over $4,000 in entries they recognize should not be compensated. *See* DE 56-1 ¶ 25; *cf. Route Triple Seven Ltd. P'ship*, 127 F. Supp. 3d at 621–22 (applying a reduction because the "fee petition is replete with lumped entries[] and vague task descriptions" but limiting it to fifteen percent because counsel had "already exercised billing judgment in removing many time entries for which it does not seek attorney's fees").

#### d. Summary

The following table compares the total hours Plaintiffs submitted with the reasonable hours included in the lodestar calculation. The reasonable hours reflect the exclusions from Section III.A.2.a, reallocations from Section III.A.2.b, and fixed-percentage reduction from Section III.A.2.c. These adjustments are presented in greater detail in Appendix A.

| Professional | Hours Submitted | Reasonable Hours |
|---|---|---|
| Ryan Oxendine | 105.1 | 61.7 |
| James Barnes IV | 94.1 | 40.8 |
| Spencer Fritts | 187.5 | 123.6 |
| Holly Mabe | 60.6 | 17.0 |
| Reallocated Time | N/A | 75.1 |

### 3. Lodestar Figure

The table below summarizes the lodestar figure calculated by multiplying the reasonable hourly rates determined in Section III.A.1 and the reasonable hours calculated in Section III.A.2. *See McAfee*, 738 F.3d at 88 (explaining the formula for calculating a lodestar figure).

| Professional | Reasonable Hours | Reasonable Hourly Rates | Reasonable Fees |
|---|---|---|---|
| Ryan Oxendine | 61.7 | $325 | $20,056.75 |
| James Barnes IV | 40.8 | 325 | 13,260.00 |
| Spencer Fritts | 123.6 | 250 | 30,898.50 |
| Holly Mabe | 17.0 | 110 | 1,870.00 |
| Reallocated Time | 75.1 | 110 | 8,256.05 |
| **TOTAL** | **318.2** | | **$74,339.30** |

The Supreme Court "has indulged a 'strong presumption' that the lodestar figure represents a reasonable attorneys' fee." *See id.* at 88–89. As discussed in Sections III.A.1 and III.A.2, the rates and hours applied reflect the court's consideration of applicable *Johnson* factors, including the time and labor expended; the difficulty of the questions raised; the skill required to perform the services; the reasonable rates charged in similar cases; and the experience, reputation, and ability of the attorneys. The results obtained also support the reasonableness of this lodestar figure,

as Plaintiffs received all amounts recoverable under the FLSA. *See* DE 56 at 5–6 (noting that Plaintiffs recovered "all damages . . . that they would have been eligible to recover in this action had they successfully litigated through trial"); *see also* DE 58 at 20 (acknowledging that "Defendant agreed to pay the full amounts recoverable by the Plaintiffs under the FLSA").

Based on the court's understanding of this case, the remaining *Johnson* factors do not warrant adjustment to the lodestar figure. Plaintiffs' counsel undertook this case on a contingent basis, *see* DE 56 at 16, but do not seek any increase beyond the lodestar figure to account for this risk, *see Rivers*, 666 F. Supp. 2d at 609 (finding this factor irrelevant when the plaintiffs were "not seeking a contingency fee risk multiplier on top of the loadstar calculation" and did not produce evidence showing it to merit any other adjustment). The court does not find this case to have been so desirable or undesirable as to require adjustment. As this is the first matter in which Plaintiffs' counsel have represented any of the Plaintiffs, *see* DE 56 at 16, the client relationship does not affect this award. Likewise, Plaintiffs recognize that there were no time limitations that "would form the basis for any adjustment to the lodestar [figure]." *See id.* at 14.

Nor are any adjustments to this lodestar figure appropriate under the second and third steps of the fee award determination. Given the fully successful outcome Plaintiffs achieved on the only claim they brought, there is no need to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones" or scale the lodestar figure to account for the degree of Plaintiffs' success. *See McAfee*, 738 F.3d at 88 (identifying these as the second and third steps). Thus, **the court awards Plaintiffs reasonable attorneys' fees in the amount of $74,339.30.**

### B. Reasonable Costs

The FLSA also provides for prevailing plaintiffs' recovery of the "costs of the action." 29 U.S.C. § 216(b). The FLSA does not define "costs," but the Fourth Circuit has held that district courts retain the "same discretion" in assessing costs as they do when awarding reasonable

attorneys' fees. *See Roy v. County of Lexington, South Carolina*, 141 F.3d 533, 549 (4th Cir. 1998). Likewise, prevailing plaintiffs retain the burden of proving the reasonableness of the costs claimed. *See Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 645 (D. Md. 2012) (citing *Spencer v. General Elec. Co.*, 706 F. Supp. 1234, 1244 (E.D.Va.1989)).

The parties disagree about the types of costs that can be recovered under the FLSA. Defendant argues that "[c]ourts have construed the term 'costs of the action' as used in the FLSA to allow only the types of costs permitted by 28 U.S.C. § 1920." *See* DE 58 at 23 (quoting *Andrews v. Am.'s Living Centers, LLC*, No. 1:10-CV-00257-MR-DLH, 2017 WL 3470939, at *9 (W.D.N.C. Aug. 11, 2017)). Plaintiffs claim a broader set of "litigation expenses." *See* DE 56-1 ¶ 27.

The Fourth Circuit rejected the argument that 28 U.S.C. § 1920 limits the costs recoverable under the FLSA in *Herold v. Hajoca Corp.*, 864 F.2d 317 (4th Cir. 1988). In *Herold*, the defendant challenged the recovery of travel expenses because they were not specifically authorized by 29 U.S.C. § 216(b) or 28 U.S.C. § 1920. *See* 864 F.2d at 323, 323 n.9. Courts' authority to tax costs under Federal Rule of Civil procedure 54(d) is limited to those categories enumerated in 28 U.S.C. § 1920. *See Herold*, 864 F.2d at 323. But the Fourth Circuit had recognized that "the difference between the scope of costs taxable under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920" and those costs recoverable under fee shifting statutes is due to the fact that 'these two bodies of law . . . are grounded in antithetical policies.'" *See Daly v. Hill*, 790 F.2d 1071, 1083–84 (4th Cir. 1986) (quoting *Dowdell v. City of Apopka*, 698 F.2d 1181, 1190 n. 12 (11th Cir.1983)) (addressing the issue in the context of an award under 42 U.S.C. § 1988). Thus, "where attorney's fees are expressly authorized by statute (as they are in 29 U.S.C. § 216(b)),[] the trial court is not limited to Rule 54(d), but, in addition, has authority to include litigation expenses as part of a 'reasonable attorney's fee.'" *See Herold*, 864 F.2d at 323; *see also Daly*, 790 F.2d at 1084 (noting that courts

considering the policies underlying fee shifting statutes have "found litigation expenses to be compensable"). Such litigation expenses have been generally understood to include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *See Andrade*, 852 F. Supp. 2d at 644 (quoting *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988)).

Plaintiffs claim $7,487.85 in litigation expenses, including "postage, courier fees, third-party emailing, text, and website service for publishing notice to potential opt-ins, purchasing a legal treatise, computer legal research, transportation, working meals, photocopies, and filing fees." *See* DE 56-1 ¶ 27. Plaintiffs divide these expenses into the following categories. *See id.*

| Category | Amount Claimed |
|---|---|
| Mailing Expenses | $990.71 |
| Third-Party email, text, and website service | 5,507.49 |
| Filing Fees | 402.00 |
| FLSA treatise | 416.22 |
| Travel & Meal Expenses | 171.43 |
| **Total** | **$7,487.85** |

Defendant does not oppose awarding $402.00 in filing fees but contends that the other costs are not recoverable. *See* DE 58 at 23–24. Apart from the argument rejected above about 28 U.S.C. § 1920, Defendant contends that the other costs are ambiguous and irrelevant. *See* DE 58 at 24.

Plaintiffs' mailing and research expenses are reasonable. Other courts have included "research" and "postage" in costs recovered from defendants in FLSA actions. *See Andrade*, 852 F. Supp. 2d at 644. As a result, the $990.71 and $416.22 claimed for these categories are awarded in full. The costs claimed for travel and publicizing the action, however, require adjustment.

Plaintiffs' supporting affidavit appears to attribute the entire $5,507.49 claimed for third-party web services to "publishing notice to potential opt-ins." *See* DE 56-1 ¶ 27. At least one court has approved similar costs related to publicizing the action to potential opt-in plaintiffs.

*See Hargrove v. Ryla Teleservices, Inc.*, No. 2:11CV344, 2013 WL 1897027, at \*7 (E.D. Va. Apr.

12, 2013), *report and recommendation adopted*, No. 2:11CV344, 2013 WL 1897110 (E.D. Va.

May 3, 2013) (approving advertising costs related to "get[ting] the word out to potential opt-in

plaintiffs"). That said, Plaintiffs claim almost ten times the amount that *Hargrove* approved

despite that case involving roughly twice the number of plaintiffs. *See id.* at \*7 (approving $643.62

requested for advertisements after noting that 239 plaintiffs opted in). Given this disparity and the

lack of any explanation for the extent of the costs incurred, the court finds it appropriate to reduce

the recovery for third-party services costs by fifteen percent. *See McNeil v. Faneuil, Inc.*, No.

4:15CV81, 2017 WL 9771834, at \*12 (E.D. Va. Nov. 8, 2017), *report and recommendation

adopted*, No. 4:15CV81, 2018 WL 1411017 (E.D. Va. Mar. 21, 2018) (reducing the travel and

meal expenses recovered by fifteen percent because the supporting submission did not include

enough information for the court to determine whether the itemized costs were reasonable).

    The same adjustment is appropriate for Plaintiffs' claimed travel and meal expenses. The

only explanation offered is that these reflect "working meals" and "transportation." *See* DE 56-1

¶ 27. While this category of costs is recoverable, these cursory explanations do not allow the court

to assess the reasonableness of the full amount sought. *See McNeil*, 2017 WL 9771834, at \*12.

    All told, **the court awards Plaintiffs $6,636.01 in reasonable costs.** The adjustments

from the amounts Plaintiffs claimed are set forth in the table below.

| Category | Amount Claimed | Amount Awarded |
|---|---|---|
| Mailing Expenses | $990.71 | $990.71 |
| Third-Party email, text, and website service | 5,507.49 | 4,681.37 |
| Filing Fees | 402.00 | 402.00 |
| FLSA treatise | 416.22 | 416.22 |
| Travel & Meal Expenses | 171.43 | 145.72 |
| **Total** | $7,487.85 | **$6,636.01** |

## IV.   Conclusion

The court GRANTS the parties' joint motion [DE 53], approves the Agreement [DE 53-1], and dismisses this action with prejudice.  As provided by the Agreement, Defendant shall pay $144,810.95 to Plaintiffs in back wages, an equal amount in liquidated damages, and a $7,500 service award to Named Plaintiff.

The court also GRANTS IN PART AND DENIES IN PART Plaintiffs' motion for fees and costs [DE 55].  Under 29 U.S.C. § 216(b), Defendant shall pay $74,339.30 in reasonable attorneys' fees and $6,636.01 in reasonable costs for a total award of $80,975.31.

SO ORDERED this _____ day of August, 2022.

Richard E Myers II

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

## Appendix A: Calculation of Total Attorneys' Fees Awarded

| Professional | Total Hours Submitted | Section III.A.2.a | | | Section III.A.2.b | Adjusted Hours | Section III.A.2.c | Reasonable Hours | Section III.A.1 | Reasonable Fees |
| | | Excludable Research | Clerical Tasks | Public Relations | Reallocated Damages Calculation Time | | Fixed 15% Reduction | | Reasonable Hourly Rates | |
|---|---|---|---|---|---|---|---|---|---|---|
| Ryan Oxendine | 105.1 | (0.5) | (1.2) | (0.3) | (30.5) | 72.6 | (10.9) | 61.7 | $  325 | $  20,055.75 |
| Jim Barnes | 94.1 | (2.8) | (9.2) | - | (34.1) | 48.0 | (7.2) | 40.8 | 325 | 13,260.00 |
| Spencer Fritts | 187.5 | (10.2) | (8.2) | - | (23.7) | 145.4 | (21.8) | 123.6 | 250 | 30,897.50 |
| Holly Mabe | 60.6 | - | (40.6) | - | - | 20.0 | (3.0) | 17.0 | 110 | 1,870.00 |
| Reallocated Time | N/A | - | - | - | 88.3 | 88.3 | (13.2) | 75.1 | 110 | 8,256.05 |
| Total | 447.3 | | | | | | | 318.2 | | $  74,339.30 |